

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

KOCH ENTERTAINMENT LP AND :
HUDSON ENTERTAINMENT, INC.
                                      :
         Plaintiffs,
                                      :
    - against –
                                      :
MOBILE STREAMS, INC.,
MOBILE STREAMS, PLC., AND  :
THE NICKELS GROUP, INC.
                                      :
         Defendants.
                                      :
------------------------------------------------x

**JUDGE STANTON**

**07 CV 2843**

**COMPLAINT**

**Jury Trial Demanded**

ECF CASE

      Plaintiffs, by their attorneys Daniel J. Aaron, P.C., on behalf of Koch Entertainment LP ("Koch") and The Law Offices of Edward R. Hearn, on behalf of Hudson Entertainment, Inc. ("Hudson"), for their complaint allege:

### I. JURISDICTION AND PARTIES

      1.      This action arises under the Copyright Act of the United States (17 U.S.C. § 101 et seq.). This Court has exclusive jurisdiction over this action under §1338(a) and §1331 of the Judicial Code (28 U.S.C. § 1338(a), §1331). Venue in this district is proper under 28 U.S.C. §§1391 and 1400.

      2.      Plaintiff Koch is a limited partnership organized and existing under the laws of the state of Delaware with its principle place of business in New York. Koch is a leading independent music company whose operations encompass record and video labels as well as distribution companies in the U.S. and Canada. Its record label is based in New York City.

3. Plaintiff Hudson is a corporation organized under the laws of the state of California with its principal place of business in Redwood Shores, California. Hudson's mobile division is a leading supplier of games, ring tones and mobile content

4. Defendant Mobile Streams, Inc. ("Mobile Streams") is a corporation organized under the laws of the state of Delaware with its corporate offices located in New York, New York. Mobile Streams is a provider of media entertainment content, such as music, comedy and other entertainment, to mobile devices.

5. Defendant Mobile Streams, Plc ("Mobile Streams UK") is a public limited company organized under the laws of the United Kingdom with its corporate offices located in Newbury. Mobile Streams UK owns Mobile Streams and The Nickels Group, Inc. Mobile Streams UK is a leading provider of music and other content to mobile phones globally.

6. Defendant The Nickels Group, Inc., ("Nickels") is a corporation organized under the laws of the state of California with its principal place of business in Manhattan Beach, California. Nickels is a producer and distributor of mobile content. Nickels' mobile distribution reaches nearly 850 million users worldwide and has distribution deals with Vodafone (Aus), Sprint (US), Telcel (Mexico), Vodafone (UK), Teljoy (South Africa), and others.

7. On or about August 7, 2006, Mobile Streams UK purchased Nickels. At all relevant times, Mobile Streams UK directed or participated in the actions of Mobile Streams and Nickels.

## II. PLAINTIFFS' RIGHTS IN THE DEATH ROW CATALOGUE

8. Pursuant to an agreement dated January 1, 2000, between Death Row Records, LLC ("DR") and Dimples Merchandising, Inc. ("Dimples"), DR sold to Dimples exclusively and forever, the right to manufacture, advertise, market, promote, distribute and sell

2

the master sound recordings comprising the Death Row catalogue (the "Catalogue") through any and all custom digital music services anywhere in the universe. The Dimples Agreement is annexed hereto in redacted form as Exhibit A.

9. The masters, which are referenced in the agreements which accompany this Complaint, and which comprise the Catalogue, have been registered under the United States Copyright Act. They are also listed along with their registration numbers on Exhibit B. The filings specifically associated with Koch's exclusive distribution rights are also listed on Exhibit B.

10. On November 28, 2001, DR entered into an exclusive distribution agreement with a corporate predecessor of Koch, named Koch Entertainment LLC, granting Koch exclusive distribution rights with respect to the Catalogue in the United States and Canada (the "Koch DR Agreement"). Included in the grant of rights was the exclusive right to manufacture, advertise sell, lease, license or otherwise use or exploit the masters and derivatives thereof, including, inter alia, any form of digital or electronic transmission subject to the rights of Dimples, which rights were not to be renewed. Koch had been told that Dimples had received a license for a term rather than an outright sale of rights. A redacted copy of the Koch Agreement is annexed hereto as Exhibit C.

11. The Koch DR Agreement was amended on July 25, 2003, in connection with the settlement of a lawsuit brought by Amaru Entertainment, Inc., as owner of the rights to the performances of Tupac Shakur, against DR and Koch. Pursuant to the settlement, the term of the Koch Agreement was extended to 2016 and, inter alia, Amaru granted Koch the worldwide exclusive right to distribute those portions of the Catalogue containing the performances of Tupac Shakur as digital downloads by any means now or hereafter known, including, inter alia,

to telephones (the "Amaru Agreement"). A redacted copy of the Amaru Agreement is annexed hereto as Exhibit D.

12.     On March 14, 2006, Koch entered into an agreement with Dimples, wherein Dimples granted Koch the exclusive right to distribute the Catalogue by digital download throughout North America, including, inter alia, via telephone (the "Koch Dimples Agreement"). A redacted copy of the Koch Dimples Agreement is annexed hereto as Exhibit E.

13.     On June 21, 2006, Koch entered into an agreement with Hudson, wherein Koch granted Hudson the exclusive right to distribute the Catalogue by digital download throughout North America, including, inter alia, via telephone (the "Koch Hudson Agreement"). A redacted copy of the Koch Hudson Agreement is annexed hereto as Exhibit F.

**COUNT I.**
**(By Koch Against The Nickels Group)**
**(Copyright Infringement of Musical Performances)**
**(Koch DR Agreement)**

14.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 13 of this Complaint as if set forth herein.

15.     Since August 18, 2004, Nickels has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

16.     Nickels' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Koch DR Agreement.

17.     Nickels' acts and omissions are wilfull and intentional acts of infringement of the copyrights in the Catalogue.

4

## COUNT II.
### (By Koch Against The Nickels Group)
### (Copyright Infringement of Musical Performances)
### (Amaru Agreement)

18. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 17 of this Complaint as if set forth herein.

19. Since August 18, 2004, Nickels has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

20. Nickels' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Amaru Agreement.

21. Nickels' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

## COUNT III.
### (By Koch Against The Nickels Group)
### (Copyright Infringement of Musical Performances)
### (Koch Dimples Agreement)

22. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 21 of this Complaint as if set forth herein.

23. Since August 18, 2004, Nickels has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

24. Nickels' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Koch Dimples Agreement.

25. Nickels' acts and omissions are wilfull and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT IV.
### (By Koch Against Mobile Streams)
### (Copyright Infringement of Musical Performances)
### (Koch DR Agreement)

26. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 25 of this Complaint as if set forth herein.

27. Mobile Streams has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

28. Mobile Streams' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Koch DR Agreement.

29. Mobile Streams' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT V.
### (By Koch Against Mobile Streams)
### (Copyright Infringement of Musical Performances)
### (Amaru Agreement)

30. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 29 of this Complaint as if set forth herein.

31. Mobile Streams has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

32. Mobile Streams' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Amaru Agreement.

33. Mobile Streams' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

## COUNT VI.
### (By Koch Against Mobile Streams)
### (Copyright Infringement of Musical Performances)
### (Koch Dimples Agreement)

34. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 33 of this Complaint as if set forth herein.

35. Mobile Streams has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

36. Mobile Streams' exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Amaru Agreement.

37. Mobile Streams' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

**COUNT VII.**
**(By Koch Against Mobile Streams UK)**
**(Copyright Infringement of Musical Performances)**
**(Koch DR Agreement)**

38. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 37 of this Complaint as if set forth herein.

39. Mobile Streams UK has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

40. Mobile Streams UK's exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Koch DR Agreement.

41. Mobile Streams UK's acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

**COUNT VIII.**
**(By Koch Against Mobile Streams UK)**
**(Copyright Infringement of Musical Performances)**
**(Amaru Agreement)**

42. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41 of this Complaint as if set forth herein.

43. Mobile Streams UK has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

44. Mobile Streams UK's exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Amaru Agreement.

45. Mobile Streams UK's' acts and omissions are wilfull and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT IX.
### (By Koch Against Mobile Streams UK)
### (Copyright Infringement of Musical Performances)
### (Koch Dimples Agreement)

46. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 45 of this Complaint as if set forth herein.

47. Mobile Streams UK has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

48. Mobile Streams UK's exploitation of the Catalogue was without authorization or permission from Koch and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Koch through the Amaru Agreement.

49. Mobile Streams UK's acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT X.
### (By Hudson Against The Nickels Group)
### (Copyright Infringement of Musical Performances)
### (Koch Hudson Agreement)

50. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 of this Complaint as if set forth herein.

51. Since June 21, 2006, Nickels has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

52. Nickels' exploitation of the Catalogue was without authorization or permission from Hudson and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Hudson through the Koch Hudson Agreement.

53. Nickels' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT XI.
### (By Hudson Against Mobile Streams)
### (Copyright Infringement of Musical Performances)
### (Koch Hudson Agreement)

54. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 53 of this Complaint as if set forth herein.

55. Mobile Streams has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

56. Mobile Streams' exploitation of the Catalogue was without authorization or permission from Hudson and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Hudson through the Koch Hudson Agreement.

57. Mobile Streams' acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

### COUNT XII.
### (By Hudson Against Mobile Streams UK)
### (Copyright Infringement of Musical Performances)
### (Koch Hudson Agreement)

58. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 57 of this Complaint as if set forth herein.

59. Mobile Streams UK has used, licensed, and commercially exploited the Catalogue and has received substantial income there from, including without limitation, licensing them as ringtones and ringbacks to carriers within the United States and Canada.

60. Mobile Streams UK's exploitation of the Catalogue was without authorization or permission from Hudson and constitutes infringements of the copyrights in the Catalogue by virtue of the rights held by Hudson through the Koch Hudson Agreement.

61. Mobile Streams UK's acts and omissions are willful and intentional acts of infringement of the copyrights in the Catalogue.

## V. JURY DEMAND

62. Plaintiffs hereby demand a trial by jury.

WHEREFORE Plaintiffs' demand judgment against defendants as follows:

A. That defendants, and each of them, and their respective agents, servants, representatives and licensees be permanently enjoined from infringing the copyrights in the Catalogue, including, but not limited to, the distribution of the Catalogue via digital download in the form of ringtones and ringbacks, the licensing of the Catalogue for such purposes, and form contributing or participating in any further infringing acts as provided in 17 U.S.C. §§502 and 503.

B. That defendants, and each of them, be required to account for all gains, profits, and advantages derived by defendants from each of their infringements of the statutory copyrights, and pay to plaintiffs all monies shown to be due and owing to plaintiffs pursuant to such accounting.

C. That defendants, and each of them, if elected, be required to pay statutory damages for each work as provided by 17 U.S.C. §504(c)(1)-(2).

D. That defendants, and each of them, be required to pay to plaintiffs the costs of this action, including reasonable attorneys' fees necessary to prosecute this action, as provided by 17 U.S.C. §505.

E. Granting plaintiffs such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
April 5, 2007

DANIEL J. AARON, P.C.

By: *[signature]*
Daniel J. Aaron (DA 0718)
437 Madison Avenue, 4th Floor
New York, NY 10022
212-684-4466
Attorney for Plaintiff-
Koch Entertainment, LP

LAW OFFICES OF EDWARD R. HEARN

By: *[signature]*
Edward R. Hearn (EH 5794)
84 West Santa Clara Street, Suite 660
San Jose, CA 95113
Telephone No. - (408) 998-3400
Attorney for Plaintiff
Hudson Entertainment, Inc.