Michael B. Shortnacy (MS-4445)
Michael L. Mallow (*admitted pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
KOCH ENTERTAINMENT LP AND                   :
HUDSON ENTERTAINMENT, INC.,
                                             :   07 CV 2843
             Plaintiffs,                     :
                                                 Hon. Louis L. Stanton (LLS) (GG)
          -against-                          :   ECF Case

                                             :
MOBILE STREAMS, INC., MOBILE                     **ANSWER AND COUNTERCLAIMS**
STREAMS, PLC., AND THE NICKELS               :
GROUP, INC.,                                     **Jury Trial Demanded**

                                             :
             Defendants.
                                             :
------------------------------------------------------------ X

    Defendants Mobile Streams, Inc., Mobile Streams, Plc., and The Nickels Group, Inc. (collectively, "Defendants") by and through their attorneys, Loeb & Loeb LLP, hereby answer the First Amended Complaint as follows:

    1.  The allegations contained in paragraph "1" state a legal conclusion to which no response is required. To the extent that a response is deemed required, Defendants lack sufficient information to form a belief regarding the basis for Plaintiffs' allegations of jurisdiction and on that basis deny Plaintiffs' allegations regarding jurisdiction. Defendants lack sufficient information to form a belief regarding Plaintiffs' allegations of proper venue and on that basis deny Plaintiffs' allegations regarding venue.

2. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "2".

3. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "3".

4. Admit that Defendant Mobile Streams, Inc. is a corporation organized under the laws of the State of Delaware with its corporate offices located in New York, New York. Defendants admit that Defendant Mobile Streams, Inc. is a provider of media entertainment content, such as music comedy and other entertainment, to mobile devices. Except as so expressly admitted herein, Defendants deny each and every allegation in paragraph "4".

5. Admit that Defendant Mobile Streams, Plc. is a public limited company organized under the laws of the United Kingdom with its corporate offices located in London, England. Defendants admit that Defendant Mobile Streams, Plc. owns Mobile Streams, Inc. and The Nickels Group, Inc. Defendants admit that Defendant Mobile Streams, Plc. is a leading provider of music and other content to mobile phones globally. Except as so expressly admitted herein, Defendants deny each and every allegation in paragraph "5".

6. Admit that Defendant The Nickels Group, Inc. is a corporation organized under the laws of the State of California with its principal place of business in Manhattan Beach, California. Defendants admit that Defendant The Nickels Group, Inc. is a producer and distributor of mobile content. Defendants admit that Defendant The Nickels Group, Inc.'s mobile distribution reaches multiple users worldwide and that Defendant The Nickels Group, Inc. has distribution deals. Except as so expressly admitted, Defendants deny each and every allegation in paragraph "6".

7. Admit that in or about August 2006, Mobile Streams Plc. acquired 100% of the shares of The Nickels Group, Inc. Except as so expressly admitted, Defendants deny each and every allegation in paragraph "7".

8. Deny the allegations contained paragraph "8".

9. Deny the allegations contained in paragraph "9".

10. Deny the allegations contained in paragraph "10".

11. Deny the allegations contained in paragraph "11".

12. Deny the allegations contained in paragraph "12".

13. Deny the allegations contained in paragraph "13".

14. In response to paragraph "14", Defendants repeat and reallege their responses to paragraphs "1" through "13" as if fully set forth herein.

15. Deny the allegations contained in paragraph "15," except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

16. Deny the allegations contained in paragraph "16" and otherwise aver that the allegations state legal conclusions to which no response is required.

17. Deny the allegations contained in paragraph "17" and otherwise aver that the allegations state legal conclusions to which no response is required.

18. In response to paragraph "18", Defendants repeat and reallege their responses to paragraphs "1" through "17" as if fully set forth herein.

19. Deny the allegations contained in paragraph "19" except admit that the Defendants have commercially exploited songs, the rights to which they received under written

contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

20. Deny the allegations contained in paragraph "20" and otherwise aver that the allegations state legal conclusions to which no response is required.

21. Deny the allegations contained in paragraph "21" and otherwise aver that the allegations state legal conclusions to which no response is required.

22. In response to paragraph "22", Defendants repeat and reallege their responses to paragraphs "1" through "21" as if fully set forth herein.

23. Deny the allegations contained in paragraph "23", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

24. Deny the allegations contained in paragraph "24" and otherwise aver that the allegations state legal conclusions to which no response is required.

25. Deny the allegations contained in paragraph "25" and otherwise aver that the allegations state legal conclusions to which no response is required.

26. In response to paragraph "26", Defendants repeat and reallege their responses to paragraphs "1" through "25" as if fully set forth herein.

27. Deny the allegations contained in paragraph "27", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

28. Deny the allegations contained in paragraph "28" and otherwise aver that the allegations state legal conclusions to which no response is required.

29. Deny the allegations contained in paragraph "29" and otherwise aver that the allegations state legal conclusions to which no response is required.

30. In response to paragraph "30", Defendants repeat and reallege their responses to paragraphs "1" through "29" as if fully set forth herein.

31. Deny the allegations contained in paragraph "31", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

32. Deny the allegations contained in paragraph "32" and otherwise aver that the allegations state legal conclusions to which no response is required.

33. Deny the allegations contained in paragraph "33" and otherwise aver that the allegations state legal conclusions to which no response is required.

34. In response to paragraph "34", Defendants repeat and reallege their responses to paragraphs "1" through "33" as if fully set forth herein.

35. Deny the allegations contained in paragraph "35", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

36. Deny the allegations contained in paragraph "36" and otherwise aver that the allegations state legal conclusions to which no response is required.

37. Deny the allegations contained in paragraph "37" and otherwise aver that the allegations state legal conclusions to which no response is required.

38. In response to paragraph "38", Defendants repeat and reallege their responses to paragraphs "1" through "37" as if fully set forth herein.

39. Deny the allegations contained in paragraph "39", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

40. Deny the allegations contained in paragraph "40" and otherwise aver that the allegations state legal conclusions to which no response is required.

41. Deny the allegations contained in paragraph "41" and otherwise aver that the allegations state legal conclusions to which no response is required.

42. In response to paragraph "42", Defendants repeat and reallege their responses to paragraphs "1" through "41" as if fully set forth herein.

43. Deny the allegations contained in paragraph "43", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

44. Deny the allegations contained in paragraph "44" and otherwise aver that the allegations state legal conclusions to which no response is required.

45. Deny the allegations contained in paragraph "45" and otherwise aver that the allegations state legal conclusions to which no response is required.

46. In response to paragraph "46", Defendants repeat and reallege their responses to paragraphs "1" through "45" as if fully set forth herein.

47. Deny the allegations contained in paragraph "27", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

48. Deny the allegations contained in paragraph "48" and otherwise aver that the allegations state legal conclusions to which no response is required.

49. Deny the allegations contained in paragraph "49" and otherwise aver that the allegations state legal conclusions to which no response is required.

50. In response to paragraph "50", Defendants repeat and reallege their responses to paragraphs "1" through "49" as if fully set forth herein.

51. Deny the allegations contained in paragraph "27", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

52. Deny the allegations contained in paragraph "52" and otherwise aver that the allegations state legal conclusions to which no response is required.

53. Deny the allegations contained in paragraph "53" and otherwise aver that the allegations state legal conclusions to which no response is required.

54. In response to paragraph "54", Defendants repeat and reallege their responses to paragraphs "1" through "53" as if fully set forth herein.

55. Deny the allegations contained in paragraph "55", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

56. Deny the allegations contained in paragraph "56" and otherwise aver that the allegations state legal conclusions to which no response is required.

57. Deny the allegations contained in paragraph "57" and otherwise aver that the allegations state legal conclusions to which no response is required.

58. In response to paragraph "58", Defendants repeat and reallege their responses to paragraphs "1" through "57" as if fully set forth herein.

59. Deny the allegations contained in paragraph "59", except admit that the Defendants have commercially exploited songs, the rights to which they received under written contracts with Death Row Records and/or Amaru Entertainment, Inc., and admit that such exploitation has generated revenue.

60. Deny the allegations contained in paragraph "60" and otherwise aver that the allegations state legal conclusions to which no response is required.

61. Deny the allegations contained in paragraph "61" and otherwise aver that the allegations state legal conclusions to which no response is required.

62. Regarding paragraph "62", no response is required.

WHEREFORE A-E.  Regarding WHEREFORE paragraphs A-E, no response is required.  To the extent a response is required, Defendants deny each and every allegation thereof, including that the relief demanded against Defendants is lawful and warranted.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses set forth below, Defendants intend no alteration of the burden of proof and/or burden of going forward with evidence which otherwise exists with respect to any particular issue at law or in equity. Furthermore, all such defenses are pleaded in the alternative and do not constitute an admission of liability or that Plaintiffs are entitled to any relief.

### FIRST DEFENSE
(Failure to State Cause of Action)

63. The First Amended Complaint, and each cause of action therein, fails to state facts sufficient to constitute any cause of action upon which relief can be granted.

### SECOND DEFENSE
(Lack of Standing)

64. Plaintiffs are barred from seeking any relief on the grounds that they lack standing to sue.

### THIRD DEFENSE
(Estoppel)

65. Plaintiffs are barred and estopped from asserting any and all claims, issues and/or causes of action in the First Amended Complaint based upon the statements, actions, representations and/or conduct of Plaintiffs.

### FOURTH DEFENSE
(Consent)

66. Plaintiffs consented to Defendants' use of the alleged copyrighted work.

### FIFTH DEFENSE
(No Commercial Misappropriation)

67. Defendants did not engage in any commercial misappropriation of the alleged copyrighted work.

## SIXTH DEFENSE
(Protected Use)

68. Any use of the alleged copyrighted work is protected use and not actionable.

## SEVENTH DEFENSE
(Waiver)

69. The First Amended Complaint, and each cause of action therein, is barred by the equitable doctrine of waiver.

## EIGHTH DEFENSE
(Unclean Hands)

70. Plaintiffs are barred from seeking relief at law or equity under the doctrine of unclean hands.

## NINTH DEFENSE
(Laches)

71. The First Amended Complaint, and each cause of action therein, is barred by the doctrine of laches.

## TENTH DEFENSE
(Any Alleged Damages Caused By Others)

72. Any alleged injuries or damages that Plaintiffs claim in the First Amended Complaint were fully or partially caused by the acts or omissions of Plaintiffs and/or third parties for whom Defendants are not liable or responsible and over which Defendants have no control.

## ELEVENTH DEFENSE
(Comparative Fault)

73.  Any alleged injuries or damages alleged in the First Amended Complaint were caused, in whole or in part, by the acts, omissions, negligence or wrongdoing of Plaintiffs and/or other persons or entities for which Defendants are not responsible or liable and did not result from any acts, omissions, negligence or wrongdoing on the part of Defendants.  Plaintiffs are therefore barred entirely from recovery against Defendants, or, alternatively, any recovery should be proportionately reduced.

## TWELFTH DEFENSE
(Failure to Mitigate)

74.  If Plaintiffs suffered any alleged damages, which damages Defendants deny, Plaintiffs failed to mitigate such damages.

## THIRTEENTH DEFENSE
(Fair Use)

75.  The Complaint, in whole or in part, is barred by the copyright doctrine of fair use.  17 U.S.C. § 107.

## FOURTEENTH DEFENSE
(Lack of Subject Matter Jurisdiction)

76.  This Court lacks subject matter jurisdiction over the claims in this case because Plaintiffs have failed to establish that they have satisfied the registration requirements contained in section 411 of the Copyright Act.  17 U.S.C. § 411.

## FIFTEENTH DEFENSE
(First Amendment Protections)

77. The Complaint, in whole or in part, is barred by the protections afforded by the First Amendment to the United States Constitution.

## SIXTEENTH DEFENSE
(Notice Of Defendants' Rights)

78. The Complaint, in whole or in part, is barred because Plaintiffs had notice of Defendants' rights prior to any purported transfer of rights to Plaintiffs by a third party or parties.

## SEVENTEENTH DEFENSE
(Statutory Priority of Rights)

79. The Complaint, in whole or in part, is barred because pursuant to 17 U.S.C. 205(e), Defendants' non-exclusive license has priority over any purported transfer of copyright ownership rights to Plaintiffs

## RIGHT TO ASSERT ADDITIONAL DEFENSES

Defendants expressly reserve the right to assert and pursue additional defenses.

## COUNTERCLAIMS

Without waiver, and in the event that this Court deems that subject matter jurisdiction exists as to Plaintiffs' claims, Defendants and Counterclaim-Plaintiffs Mobile Streams, Inc., Mobile Streams, Plc., and The Nickels Group, Inc., by and through their attorneys Loeb & Loeb LLP, for their counterclaims, further allege, based on personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

1. As set forth below, these Counterclaim-Plaintiffs seek damages for tortious interference with contract and tortious interference with prospective economic advantage arising under state law.

## THE PARTIES

2. Counterclaim-Plaintiff Mobile Streams, Inc. is a corporation organized under the laws of the state of Delaware with its corporate offices located in New York, New York. Counterclaim-Plaintiff Mobile Streams, Inc. is a provider of media entertainment content, such as music comedy and other entertainment, to mobile devices.

3. Counterclaim-Plaintiff Mobile Streams, Plc. is a public limited company organized under the laws of the United Kingdom with its corporate offices located in London, England. Counterclaim-Plaintiff Mobile Streams, Plc. owns Mobile Streams, Inc. and The Nickels Group, Inc. Counterclaim-Plaintiff Mobile Streams, Plc. is a leading provider of music and other content to mobile phones globally.

4. Counterclaim-Plaintiff The Nickels Group, Inc. is a corporation organized under the laws of the state of California with its principal place of business in Manhattan Beach, California. Counterclaim-Plaintiff The Nickels Group, Inc. is a producer and distributor of mobile content, having distribution deals worldwide that reach multiple worldwide users.

5. By virtue of having commenced their action in this Court, this Court has Counterclaim-Defendants' consent to exercise personal jurisdiction over them.

## THE AGREEMENTS

6. On or about August 18, 2004, Death Row Records ("DR") and Counterclaim-Plaintiff The Nickels Group, Inc. entered into a written licensing agreement whereby The Nickels Group, Inc. obtained rights to use certain songs in the DR music catalogue

(the "Catalogue"), including the rights to license the wireless and digital download rights (the "Agreement").  A copy of the Agreement is attached hereto as Exhibit A.  On or about March 11, 2005, DR and The Nickels Group, Inc. entered into a written agreement that amended certain terms of the Agreement (the "Amendment").  A copy of the Amendment is attached hereto as Exhibit B.  In pertinent part, for due consideration, the Amendment extended the license term for twelve months, from August 18, 2006 to August 18, 2007.  The Nickels Group, Inc. thereafter transferred to Counterclaim-Plaintiff Mobile Streams all of the rights in and to the Catalogue pursuant to the Agreement and Amendment.  Pursuant to the Agreement, Amendment, and transfer, Counterclaim-Plaintiff Mobile Streams had the rights to license the wireless and digital download rights from the Catalogue until August 18, 2007.

       7.   On or about March 1, 2005, Counterclaim-Plaintiff The Nickels Group, Inc. entered into a license agreement with Amaru Entertainment, Inc., a California corporation, (for this paragraph "the parties") such that The Nickels Group, Inc. obtained the right to license mobile content from the DR music catalogue containing performances by the artist Tupac Shakur.  A copy of the 2005 license agreement is attached hereto as Exhibit C.  On or about August 14, 2006, the parties entered again into a license agreement whereby the term of the right to license mobile content from the Catalogue containing certain performances by Tupac Shakur was granted as commencing on August 18, 2006 and concluding on August 18, 2007 ("Amaru-Nickels-Tupac Agreement").  A copy of the Amaru-Nickels-Tupac Agreement is attached hereto as Exhibit D.  This license was non-exclusive, and limited to North America and the United Kingdom and to certain master recordings of the Tupac Shakur content.

## ADDITIONAL COMMON FACTS

8.  Counterclaim-Defendant Koch Entertainment at all relevant times did not have the exclusive right to exploit and distribute the Catalogue.  Counterclaim-Defendant Hudson Entertainment at all relevant times did not have exclusive rights to exploit and distribute the Catalogue.

9.  Pursuant to the Agreement, Amendment, transfer, and Amaru-Nickels-Tupac Agreement, Counterclaim-Plaintiffs had agreements with third parties to distribute content of the Catalogue, including digital content, to mobile devices.  Additionally, Counterclaim-Plaintiffs had business relationships and prospective business relationships with third parties to distribute content of the Catalogue, including digital content, to mobile devices.

10. Counterclaim-Defendants knew of the contracts between Counterclaim-Plaintiffs and the third parties.  Counterclaim-Defendants acted intentionally to induce a breach or disruption of the contracts.  Counterclaim-Defendants' acts include, but are not limited to, sending cease and desist letters to third parties, misrepresenting Counterclaim-Defendants' rights in the Catalogue, misrepresenting Counterclaim-Plaintiffs' rights in the Catalogue, and wrongfully asserting that the Counterclaim-Defendants, and not Counterclaim-Plaintiffs, had the right to distribute content from the catalogue, including the digital content to mobile devices.  The cease and desist letters and the multiple misrepresentations were designed to sever the contractual relationship between Counterclaim-Plaintiffs and third parties.  Upon information and belief, Counterclaim-Defendants have engaged in other wrongful acts designed to induce a breach or disruption of the contracts between Counterclaim-Plaintiffs and third parties.

11. Counterclaim-Defendants also knew of the economic and prospective contractual relationships between Counterclaim-Plaintiffs and third parties.  Counterclaim-Defendants engaged in wrongful acts designed to interfere with and disrupt Counterclaim-

Plaintiffs' economic relationships and prospective contractual relationships with third parties. These acts include, but are not limited to, sending cease and desist letters to third parties, misrepresenting their rights in the Catalogue, misrepresenting Counterclaim-Plaintiffs' rights in the Catalogue, and wrongfully asserting that they, and not Counterclaim-Plaintiffs, had the right to distribute content from the catalogue, including the digital content to mobile devices. The cease and desist letters and the multiple misrepresentations were designed to destroy the economic relationships between Counterclaim-Plaintiffs and third parties. Upon information and belief, Counterclaim-Defendants have engaged in other wrongful acts to disrupt the economic relationships between Counterclaim-Plaintiffs and third parties.

12.     Counterclaim-Plaintiffs' contractual and economic relationships have been disrupted as a result of the wrongful acts by Counterclaim-Defendants, and Counterclaim-Plaintiffs have been damaged as a result of these wrongful acts. Counterclaim-Plaintiffs advised Counterclaim-Defendants of their rights to the Catalogue prior to and subsequent to the wrongful acts. Counterclaim-Defendants continued to engage in the wrongful acts, without justification, good faith, or privilege to do so.

### FIRST COUNTERCLAIM
(*Tortious Interference With Contract*)

13.     Counterclaim-Plaintiffs repeat and reallege each of the allegations contained in paragraphs "1" though "12" of the Counterclaim with the same force and effect as if fully set forth herein.

14.     Counterclaim-Plaintiffs have entered into contracts with certain third parties for engaging, assisting, and/or otherwise promoting the sale, copying, downloading, or distribution of the Catalogue.

15. Upon information and belief, Counterclaim-Defendants had knowledge of the contracts between Counterclaim-Plaintiffs and the third parties.

16. Upon information and belief, Counterclaim-Defendants, with notice and knowledge of the said contractual relationships between Counterclaim-Plaintiffs and the third parties, wrongfully and intentionally disrupted the contractual relationships and/or induced the breach of the contracts between the Counterclaim-Plaintiffs and the third parties.

17. Said conduct by Counterclaim-Defendants was undertaken without justification, privilege, or good faith.

18. Said conduct by Counterclaim-Defendants resulted in the disruption and/or breach of the contractual relationships between Counterclaim-Plaintiffs and the third parties.

19. As a result of said conduct by Counterclaim-Defendants, Counterclaim-Plaintiffs have suffered damages in an amount to be determined at trial.

20. Counterclaim-Defendants' said conduct was willful and malicious thereby entitling Counterclaim-Plaintiffs to punitive damages.

## SECOND COUNTERCLAIM
(Tortious Interference With Prospective Business Relations)

21. Counterclaim-Plaintiffs repeat and reallege each of the allegations contained in paragraphs "1" though "20" of the Counterclaim with the same force and effect as if fully set forth herein.

22. Counterclaim-Plaintiffs had business relationships and prospective business relationships with third parties relating to and resulting from Counterclaim-Plaintiffs' rights to the Catalogue.

209765-10001

17

23. Upon information and belief, Counterclaim-Defendants had knowledge of the business relationships and prospective business relationships between Counterclaim-Plaintiffs and the third parties.

24. Upon information and belief, Counterclaim-Defendants, with notice and knowledge of the said relationships between Counterclaim-Plaintiffs and third parties, engaged in dishonest, unfair, illegal, wrongful, and improper means to wrongfully and intentionally interfere with the said relationships between Counterclaim-Plaintiffs and the third parties.

25. Said conduct by Counterclaim-Defendants was undertaken without justification, privilege, or good faith.

26. Said conduct by Counterclaim-Defendants resulted in injury to Counterclaim-Plaintiffs, the extent of damages to be determined at trial. Said injury included but is not limited to loss of business relationships, loss of prospective business relationships, loss of contractual relationships, and loss of business goodwill and reputation.

27. Counterclaim-Defendants' said conduct was willful and malicious thereby entitling Counterclaim-Plaintiffs to punitive damages.

## DEFENDANTS' PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiffs take nothing by the First Amended Complaint;

2. That the First Amended Complaint be dismissed in its entirety with prejudice;

3. That Defendants/Counterclaim-Plaintiffs recover from Plaintiffs/Counterclaim-Defendants their attorneys' fees, expenses and costs incurred herein; and

      4.      On their Counterclaim, that Counterclaim-Plaintiffs be awarded damages in an amount to be determined at trial in connection with Counterclaim-Defendants' tortious interference with Counterclaim-Plaintiffs' contracts with third parties and Counterclaim-Plaintiffs' business relationships; and that Counterclaim-Plaintiffs be awarded punitive damages in an amount to be determined at trial; and

      5.      That Defendants/ Counterclaim-Plaintiffs recover such other and further relief as the Court deems just and proper.

Dated: New York, New York  
       October 19, 2007

                                    LOEB & LOEB LLP

                                By:   /s/ Michael Shortnacy  
                                  Michael B. Shortnacy (MS-4445)  
                                  Michael L. Mallow (pro hac vice)  
                                  345 Park Avenue  
                                  New York, New York 10154-1895  
                                  (212) 407-4000

                                  Attorneys for Defendants  
                                  Mobile Streams, Inc., Mobile Streams, Plc.,  
                                  and The Nickels Group, Inc.