# EXHIBIT C

## RELEASE & LICENSE AGREEMENT

This RELEASE & LICENSE AGREEMENT (the "Agreement") is made and entered into as of March 1, 2005, by and between The Nickels Group, Inc., a California corporation ("TNG"), and Amaru Entertainment, Inc., a California corporation ("Amaru"). TNG or Amaru are sometimes referred to herein as "party" or collectively as "parties".

## RECITALS

WHEREAS, TNG entered into a licensing agreement with Death Row Records ("Death Row") dated August 18, 2004 (the "Death Row Agreement"), for TNG's right to license the mobile content from the Death Row catalog including, without limitation, mobile content containing performances by the artist professionally known as Tupac Shakur (the "Tupac Mobile Content"); and

WHEREAS, based upon the representations and warranties made by Death Row Records in the Death Row Agreement, TNG understood that it had the right to license the Tupac Mobile Content and thereby TNG entered into a licensing agreement with the mobile content provider Jamster International Sarl ("Jamster") dated as of March 1, 2005, for Jamster's right to license the Tupac Mobile Content; and

WHEREAS, pursuant to the cease and desist letter from Donald N. David, Esq. of Cozen O'Connor, P.C. dated April 11, 2005, regarding the alleged unauthorized distribution of the Tupac Mobile Content, Amaru claims that TNG did not have the right to license the Tupac Mobile Content; and

WHEREAS, pursuant to the terms and conditions as more fully set forth below, Amaru shall release TNG and Jamster from any and all Claims (as defined in this Agreement) with respect to any use of the Tupac Mobile Content by TNG or Jamster during the term of the release only (the "Release"); and

WHEREAS, pursuant to the terms and conditions as more fully set forth below, Amaru shall license to TNG certain songs of the Tupac Mobile Content during the term of the license (the "License");

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, and for other good and valuable consideration, it is hereby agreed by and between the parties hereto as follows:

I.  **Terms of Release**

   A.   <u>Term</u>:  The term of usage of the Tupac Mobile Content by TNG and Jamster shall be the time period commencing on March 1, 2005, and concluding on May 1, 2005 (the "Release Term").

   B.   <u>Release of Claims</u>:  Amaru hereby acknowledges that it, its agents, employees, successors and assigns, hereby forever release and discharge TNG and Jamster, their agents, employees, successors and assigns from any and all claims, demands, actions, causes of action,

LA-89140 v1

suits, damages, liabilities, rights, interests, controversies, sums of money, attorneys' fees, judgments, orders, accounts, obligations, covenants, agreements, and contracts (collectively, "Claims") of whatever kind or nature in law, equity or otherwise, which Amaru now has, has had, or at any time may have, against TNG or Jamster by reason of any matter, cause, or thing whatsoever with respect to any use of the Tupac Mobile Content by TNG or Jamster including, without limitation, any and all authorized and unauthorized uses arising out of, in connection with, or in any way relating to the licensing, distribution and/or exploitation of the Tupac Mobile Content during the Release Term. Notwithstanding the foregoing, it is hereby understood by TNG that Amaru is not releasing Death Row from any and all Claims Amaru has or may have against Death Row relating to TNG or Jamster.

        C.    <u>Release of Unknown Claims</u>: Amaru hereby acknowledges that it is within its contemplation that it may have claims against TNG or Jamster, which at the time of execution of this Agreement, it may have no knowledge or suspicion of. Notwithstanding the foregoing, Amaru represents, acknowledges and agrees that the Release provided herein shall extend to all Claims in any way based on, connected with or related to the matters described herein, whether or not known, claimed or suspected by Amaru, and that it is Amaru's intention to fully, finally and forever settle and release all matters, disputes and differences, known or unknown, suspected or unsuspected, which may now exist or heretofore have existed in connection with the Release contained herein. In furtherance of such intention, the Release given herein shall be and remain in effect as a full and complete general release, notwithstanding the discovery or existence of any such additional or different claims or facts. Amaru hereby acknowledges that it is familiar with Section 1542 of the California Civil Code ("Section 1542"), which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Amaru hereby waives and relinquishes any right and benefit which it has or may have under Section 1542 to the full extent that Amaru may lawfully waive all such rights and benefits pertaining to the subject matter hereof.

## II. <u>Terms of License</u>

        A.    <u>Term</u>: The term of the License granted hereunder shall be for a period of six (6) months commencing on March 1, 2005, and concluding on September 1, 2005 (the "License Term").

        B.    <u>Territory</u>: The territory of the License granted hereunder shall be North America and the United Kingdom only.

        C.    <u>Exclusivity</u>: The License granted hereunder shall be non-exclusive.

        D.    <u>Songs Licensed</u>: The License granted hereunder shall be limited to the following master recordings of the Tupac Mobile Content (the "Masters"):

        (1)    2 of Amerikaz Most Wanted

  (2) I Ain't Mad At Cha

  (3) Ambitions Az A Riadah

  (4) California Love

  (5) How Do You Want It

 E. <u>Digital Content</u>: To the extent that Amaru has the rights to do so, Amaru shall license the Masters to TNG for the following uses only: digital content in the form of ringtones, ringbacks, real music tones, master tones, true tones, mobile phone themes, and in the form of polyphonics and monophonics. Notwithstanding the foregoing, the digital content shall not include TNG's right to Tupac Shakur's likeness.

 F. <u>Compensation</u>: During the License Term, Amaru shall receive the following compensation:

  (1) A minimum monthly guaranteed payment of ██████████ ██████ (collectively, the "Payments") for the Term. The Payments for the first three (3) months of the Term (i.e., ██████) shall be payable within five (5) days following the full execution of this Agreement. The remaining Payments shall be payable no later than the fifth day of each calendar month. The Payments shall be applied against and offset from any amounts owed by TNG pursuant to the Percentage Payment specified in section F(2)(a) below.

  (2) In addition to the Payments, Amaru shall receive the following:

   (a) ██████████ (the "Percentage Payment") of the compensation payable by TNG to Death Row Records for TNG's right to license the Tupac Mobile Content under the Death Row Agreement, for the use of any of the Masters that TNG licenses to mobile content providers including, without limitation, Jamster.

  (3) Any amounts of the Percentage Payment in excess of the Payments shall be payable to Amaru on a quarterly basis and in no event later than the fifteenth day of the month following the last month of any particular quarter. Such payment shall be accompanied by an accounting statement in accordance with section II.G. below.

 G. <u>Accounting Rights</u>: TNG shall furnish to Amaru on a quarterly basis, and in no event later than the fifteenth day of the month following the last month of any particular quarter, an accounting statement setting forth sales information with respect to the Masters accompanied by any Percentage Payment payable to Amaru.

 H. <u>Audit Rights</u>: TNG shall keep separate and accurate books and records concerning all transactions relating to this Agreement. Upon fifteen (15) days' prior written notice and no more than once during the License Term, TNG shall permit Amaru and/or its authorized representatives to inspect (and make copies) and conduct an examination during TNG's business hours of all or any such books and records pertaining to all transactions relating to this Agreement where such books and records are usually maintained.

**REDACTED**

**III.     General Terms of Agreement**

    A.    Representations & Warranties:

        (1) TNG hereby represents and warrants to the best of its knowledge and ability the following:

        (a) TNG has the right to enter into and fully perform all of its obligations under this Agreement.

        (b) TNG hereby acknowledges that it shall not at any time license any Tupac Mobile Content without Amaru's prior written authorization.

        (c) TNG warrants that it will obtain any and all applicable consents, licenses and permissions required in connection with the use of the compositions and lyrics and performances embodied on the Masters (including any mechanical or performance copyright licenses and such other publisher licenses, payments or consents that may be required).

        (d) TNG shall comply with all applicable laws in the performance of its obligations under this Agreement.

        (2) Amaru hereby represents and warrants the following:

        (a) Amaru has the right to enter into and fully perform all of its obligations under this Agreement.

        (b) By virtue of the various agreements between Death Row and Amaru, Death Row has the right to provide TNG with the right to license the Masters as provided in this Agreement only with the written approval of Afeni Shakur.

        (c) Amaru has not and will not previously licensed, assigned, granted or in any way encumbered (and will not in the future license, assign, grant or encumber) the Masters or any rights therein so as to derogate from the License granted under this Agreement.

    B.    Indemnification:

        (1) TNG shall defend, indemnify and hold Amaru, its successors, licensees, assigns, and the respective officers, directors, agents and employees of each of the foregoing, harmless against any and all damages, liabilities, costs and expenses, including reasonable attorneys' fees actually incurred (collectively, "Damages"), resulting from, arising out of or in any way connected with any claim, third party claim, demand, action, or proceeding (collectively, "Demands") inconsistent with this Agreement or any representation or warranty made by TNG hereunder.

        (2) Amaru shall defend, indemnify and hold TNG, its successors, licensees, assigns, and the respective officers, directors, agents and employees of each of the foregoing, harmless against any and all Damages resulting from, arising out of or in any way connected

with any Demands that arise as a result of any inconsistent representation or warranty made by Amaru hereunder.

    C.    <u>Breach & Cure</u>:

        (1) The failure by either party to this Agreement to perform any of its obligations hereunder shall not be deemed a breach hereof unless the non-breaching party serves written notice of such failure on the alleged breaching party and such party fails to cure such non-performance within thirty (30) days after its receipt of such notice (provided such breach is reasonably capable of being fully remedied within such thirty (30) day period, or if such breach is not reasonably capable of being fully remedied within such thirty (30) day period, if the alleged breaching party commences to remedy such breach within such thirty (30) day period and proceeds with reasonable diligence to complete the remedying of such breach).

        (2) The foregoing notwithstanding, TNG's failure to make any payments to Amaru in accordance with this Agreement shall be deemed a breach of this Agreement if such non-payment is not fully cured within ten (10) days following the date upon which the payment is due.

    C.    <u>Termination</u>: In the event of a breach of this Agreement which is not cured in the time period specified in section III.C. above, the non-breaching party shall have the right to terminate this Agreement upon ten (10) days written notice to the other party.

    D.    <u>Intentionally Deleted</u>.

    E.    <u>Assignment</u>: Either party shall have the right, at its election, to assign any of its rights hereunder, in whole or in part, to any person, firm or corporation.

    F.    <u>Relationship of Parties</u>: Nothing herein contained shall be construed to place TNG and Amaru in the relationship of principal and agent, master and servant, partners, joint venturers or employer and employee, and Amaru shall not have, or expressly or by implication, represent itself as having (or represent itself as being a representative of TNG), any authority to make contracts in the name of or binding on TNG, or to obligate or bind TNG in any manner whatsoever, and any such conduct shall be deemed a reach of this Agreement.

    G.    <u>Entire Agreement</u>: This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes all prior agreements, whether written or oral, pertaining hereto. No modification, amendment or waiver of this Agreement or any of the provisions hereof shall be binding upon TNG or Amaru unless confirmed by a written instrument signed by a duly authorized officer of TNG and Amaru. No waiver by TNG or Amaru of any provision of this Agreement or of any default hereunder shall affect their rights thereafter to enforce such provision or to exercise any rights in the event of any other default whether or not similar. The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision hereof.

    H.    <u>Notices</u>: All notices to the parties under this Agreement shall be sent by United States registered mail or certified mail, postage prepaid, or by personal delivery, or courier addressed to the parties at the addresses listed below. Notices shall be deemed given on the date

delivered by hand delivery, or on the date sent by courier. Notices shall be deemed given 48 hours after the date they are mailed.

    (1) To TNG:

    c/o Kirkpatrick & Lockhart Nicholson Graham LLP
    10100 Santa Monica Boulevard
    7th Floor
    Los Angeles, CA 90067
    Attn: Bonnie Berry LaMon, Esq.

    (2) To Amaru:

    c/o LaPolt Law, P.C.
    9000 Sunset Boulevard
    Suite 800
    West Hollywood, CA 90069
    Attn: Dina LaPolt, Esq.

    With courtesy copies to:

    Cozen O'Connor
    909 Third Avenue
    17th Floor
    New York, NY 10022-7431
    Attn: Donald N. David, Esq.

    I.    Governing Law: This Agreement has been entered into in the State of California, and its validity, construction, interpretation and legal effect shall be governed by the laws of the State of California applicable to contracts entered into and performed entirely within the State of California.

    J.    Headings: Headings are inserted for reference and convenience only and in no way define, limit or describe the scope of this Agreement or intent of any provision.

    IN WITNESS WHEREOF, the parties have fully executed this Agreement as of the year and date first above written.

The Nickels Group, Inc.                                 Amaru Entertainment, Inc.

_____       _____
An Authorized Signatory                                 An Authorized Signatory