# EXHIBIT D

## LICENSE AGREEMENT

This LICENSE AGREEMENT (the "Agreement") is made and entered into as of August 14, 2006, by and between The Nickels Group, ("TNG"), a division of Mobile Streams, Inc., a Delaware Corporation and Amaru Entertainment, Inc., a California corporation ("Amaru"). TNG or Amaru are sometimes referred to herein as "party" or collectively as "parties".

## RECITALS

WHEREAS, TNG entered into a Release and License Agreement with Amaru, dated March 1, 2005 (the "Release and License Agreement")for TNG's right to license mobile content from the Death Row catalog containing performances by the artist professionally known as Tupac Shakur (the "Tupac Mobile Content") until September 1, 2005; and

WHEREAS, the parties agreed that notwithstanding the expiration of the Release and License Agreement, TNG was granted the right to license the Tupac Mobile Content for a four month period commencing April 18, 2006 and expiring August 18, 2006; and

WHEREAS, the parties hereby agree that pursuant to the terms and conditions as more fully set forth below, Amaru shall license to TNG certain songs of the Tupac Mobile Content during the term of the license (the "License");

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, and for other good and valuable consideration, it is hereby agreed by and between the parties hereto as follows:

I. **Terms of License**

    A.    <u>Term</u>: The term of the License granted hereunder shall be for a period of one year commencing on August 18, 2006 and concluding on August 18, 2007 (the "License Term").

    B.    <u>Territory</u>: The territory of the License granted hereunder shall be North America and the United Kingdom only.

    C.    <u>Exclusivity</u>: The License granted hereunder shall be non-exclusive.

    D.    <u>Songs Licensed</u>: The License granted hereunder shall be limited to the following master recordings of the Tupac Mobile Content (the "Masters"):

    (1) 2 of Amerikaz Most Wanted

    (2) I Ain't Mad At Cha

    (3) Ambitions Az A Riadah

    (4) California Love

    (5) How Do You Want It

LA-89140 v1

E.    Digital Content: To the extent that Amaru has the rights to do so, Amaru shall license the Masters to TNG for the following uses only: digital content in the form of ringtones, ringbacks, real music tones, master tones, true tones, mobile phone themes, and in the form of polyphonics and monophonics. Notwithstanding the foregoing, the digital content shall not include TNG's right to Tupac Shakur's likeness.

F.    Compensation: During the License Term, Amaru shall receive the following compensation:

   (1) A minimum monthly guaranteed payment of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (the "Payment(s)") for the Term. The Payment for the first month of the Term shall be payable immediately following the full execution of this Agreement. The remaining Payments shall be payable no later than the fifth day of each calendar month. The Payments shall be applied against and offset from any amounts owed by TNG pursuant to the Percentage Payment specified in section F(2)(a) below.

   (2) In addition to the Payments, Amaru shall receive the following:

      (a) ▇▇▇▇▇▇▇ (the "Percentage Payment") of the compensation payable by TNG to Death Row Records for TNG's right to license the Tupac Mobile Content under the Death Row Agreement, for the use of any of the Masters that TNG licenses to mobile content providers including, without limitation, Jamster.

   (3) Any amounts of the Percentage Payment in excess of the Payments shall be payable to Amaru on a quarterly basis and in no event later than the fifteenth day of the month following the last month of any particular quarter. Such payment shall be accompanied by an accounting statement in accordance with section II.G. below.

G.    Accounting Rights: TNG shall furnish to Amaru on a quarterly basis, and in no event later than the fifteenth day of the month following the last month of any particular quarter, an accounting statement setting forth sales information with respect to the Masters accompanied by any Percentage Payment payable to Amaru.

H.    Audit Rights: TNG shall keep separate and accurate books and records concerning all transactions relating to this Agreement. Upon fifteen (15) days' prior written notice and no more than once during the License Term, TNG shall permit Amaru and/or its authorized representatives to inspect (and make copies) and conduct an examination during TNG's business hours of all or any such books and records pertaining to all transactions relating to this Agreement where such books and records are usually maintained.

III.    **General Terms of Agreement**

A.    Representations & Warranties:

   (1) TNG hereby represents and warrants to the best of its knowledge and ability the following:

**REDACTED**

(a) TNG has the right to enter into and fully perform all of its obligations under this Agreement.

(b) TNG hereby acknowledges that it shall not at any time license any Tupac Mobile Content without Amaru's prior written authorization.

(c) TNG warrants that it will obtain any and all applicable consents, licenses and permissions required in connection with the use of the compositions and lyrics and performances embodied on the Masters (including any mechanical or performance copyright licenses and such other publisher licenses, payments or consents that may be required).

(d) TNG shall comply with all applicable laws in the performance of its obligations under this Agreement.

(2) Amaru hereby represents and warrants the following:

(a) Amaru has the right to enter into and fully perform all of its obligations under this Agreement.

(b) By virtue of the various agreements between Death Row and Amaru, Death Row has the right to provide TNG with the right to license the Masters as provided in this Agreement *only with the written approval of Afeni Shakur.*

(c) Amaru has not and will not previously licensed, assigned, granted or in any way encumbered (and will not in the future license, assign, grant or encumber) the Masters or any rights therein so as to derogate from the License granted under this Agreement.

B.  Indemnification:

(1) TNG shall defend, indemnify and hold Amaru, its successors, licensees, assigns, and the respective officers, directors, agents and employees of each of the foregoing, harmless against any and all damages, liabilities, costs and expenses, including reasonable attorneys' fees actually incurred (collectively, "Damages"), resulting from, arising out of or in any way connected with any claim, third party claim, demand, action, or proceeding (collectively, "Demands") inconsistent with this Agreement or any representation or warranty made by TNG hereunder.

(2) Amaru shall defend, indemnify and hold TNG, its successors, licensees, assigns, and the respective officers, directors, agents and employees of each of the foregoing, harmless against any and all Damages resulting from, arising out of or in any way connected with any Demands that *arise as a result of any inconsistent representation or warranty made by Amaru hereunder.*

C.  Breach & Cure:

(1) The failure by either party to this Agreement to perform any of its obligations hereunder shall not be deemed a breach hereof unless the non-breaching party serves written notice of such failure on the alleged breaching party and such party fails to cure such non-

performance within thirty (30) days after its receipt of such notice (provided such breach is reasonably capable of being fully remedied within such thirty (30) day period, or if such breach is not reasonably capable of being fully remedied within such thirty (30) day period, if the alleged breaching party commences to remedy such breach within such thirty (30) day period and proceeds with reasonable diligence to complete the remedying of such breach).

(2) The foregoing notwithstanding, TNG's failure to make any payments to Amaru in accordance with this Agreement shall be deemed a breach of this Agreement if such non-payment is not fully cured within ten (10) days following the date upon which the payment is due.

C.  Termination: In the event of a breach of this Agreement which is not cured in the time period specified in section III.C. above, the non-breaching party shall have the right to terminate this Agreement upon ten (10) days written notice to the other party.

D.  Intentionally Deleted.

E.  Assignment: Either party shall have the right, at its election, to assign any of its rights hereunder, in whole or in part, to any person, firm or corporation.

F.  Relationship of Parties: Nothing herein contained shall be construed to place TNG and Amaru in the relationship of principal and agent, master and servant, partners, joint venturers or employer and employee, and Amaru shall not have, or expressly or by implication, represent itself as having (or represent itself as being a representative of TNG), any authority to make contracts in the name of or binding on TNG, or to obligate or bind TNG in any manner whatsoever, and any such conduct shall be deemed a reach of this Agreement.

G.  Entire Agreement: This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes all prior agreements, whether written or oral, pertaining hereto. No modification, amendment or waiver of this Agreement or any of the provisions hereof shall be binding upon TNG or Amaru unless confirmed by a written instrument signed by a duly authorized officer of TNG and Amaru. No waiver by TNG or Amaru of any provision of this Agreement or of any default hereunder shall affect their rights thereafter to enforce such provision or to exercise any rights in the event of any other default whether or not similar. The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision hereof.

H.  Notices: All notices to the parties under this Agreement shall be sent by United States registered mail or certified mail, postage prepaid, or by personal delivery, or courier addressed to the parties at the addresses listed below. Notices shall be deemed given on the date delivered by hand delivery, or on the date sent by courier. Notices shall be deemed given 48 hours after the date they are mailed.

(1) To TNG:

Bonnie Berry LaMon, Esq.
8023 Beverly Boulevard
Suite 5-226

4

Los Angeles, CA 90048

(2) To Amaru:

c/o LaPolt Law, P.C.
9000 Sunset Boulevard
Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.

With courtesy copies to:

Cozen O'Connor
909 Third Avenue
17th Floor
New York, NY 10022-7431
Attn: Donald N. David, Esq.

I.     Governing Law: This Agreement has been entered into in the State of California, and its validity, construction, interpretation and legal effect shall be governed by the laws of the State of California applicable to contracts entered into and performed entirely within the State of California.

J.     Headings: Headings are inserted for reference and convenience only and in no way define, limit or describe the scope of this Agreement or intent of any provision.

IN WITNESS WHEREOF, the parties have fully executed this Agreement as of the year and date first above written.

The Nickels Group, Inc.                                                  Amaru Entertainment, Inc.

_____                                          _____
An Authorized Signatory                                               An Authorized Signatory

- 5 -